# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> SNO H. RUSH, <br><br> Defendant. | Criminal Action No. 10-00246 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(April 10, 2012)

Defendant Sno H. Rush ("Rush") used to be employed by the United States Marshals Service ("USMS") as an administrative officer in the Superior Court for the District of Columbia. Between April 2006 and February 2009, Rush managed to convert to her own personal use a total of $104,000 in USMS funds. Before this Court, Rush pleaded guilty to one count of conversion in violation of 18 U.S.C. § 641, and was sentenced to serve twenty-one months of imprisonment to be followed by thirty-six months of supervised release and to pay $104,100 in criminal monetary penalties in the form of restitution and a special assessment. She is now in the custody of the Bureau of Prisons (the "BOP") at the Federal Prison Camp in Alderson, West Virginia.

Before the Court is Rush's *pro se* [32] Motion to Amend the Judgment ("Motion to Amend"), filed on January 30, 2012. Rush asks the Court to modify its [20] Judgment dated May 9, 2011 to set her monthly payments under the BOP's Inmate Financial Responsibility Program ("IFRP") at the minimum amount allowable for the remainder of her incarceration. The United States filed a [36] Response on March 12, 2012. Upon careful consideration of the

parties' submissions, the relevant authorities, and the record as a whole,[1] Rush's [32] Motion to Amend shall be DENIED for the simple reason that the Court's Judgment does not require Rush to participate in the BOP's IFRP at all, let alone obligate her to make specific monthly payments under that program. Regardless, the Court does not have the authority to interfere with the BOP's authority in administering its program. As explained below, to the extent Rush seeks relief in connection with her participation in IFRP, her remedy must lie elsewhere.

## BACKGROUND

Unless otherwise noted, the factual background set forth here is derived from the [5] Factual Basis for Plea. All dates and monetary amounts are approximations.

From October 1998 to November 2008, Rush was employed by USMS as an administrative officer in the Superior Court for the District of Columbia. In that capacity, Rush's responsibilities included handling payroll-related matters, authorizing payment to employees and outside entities, and drafting and signing United States Treasury checks for expenditures. Between April 2006 and February 2009, Rush converted to her own personal use a total of $104,000 in USMS funds. She did so through three basic devices.

First, USMS assigns each of its official vehicles a Fleet credit card ("Fleet card") to be used for fuel purchases. Fleet cards are not assigned to individual employees and, when a vehicle is sold, the Fleet card assigned to that vehicle must be returned for deactivation. In April 2006, Rush took possession of a Fleet card assigned to a USMS vehicle that was to be sold. Rather

---

[1] At the Court's request, the United States Probation Office provided the Court with a Memorandum, dated April 3, 2012, explaining the nature of the BOP's IFRP. The Court has not placed the Memorandum on the public docket because it has not relied on the Memorandum in rendering its decision and because the Memorandum includes personal information specific to Rush. However, the Memorandum is available from the United States Probation Office.

than destroying or deactivating the card, Rush took the card home and, between April 2006 and November 2008, used the card to cover personal expenses for gas and other automotive purchases. When the Fleet card expired in November 2008, Rush renewed the card and received a new card. She then used that card from December 2008 to February 2009. Overall, Rush incurred $15,000 in charges, which USMS paid directly to the credit card company.

Second, using a family member's Social Security Number, Rush created a fictitious employee in the USMS payroll system and converted the salary for that fictitious employee to her own use. Between November 2007 and October 2008, Rush completed false time and attendance records for the fictitious employee and issued United States Treasury checks to the fictitious employee in the total amount of $31,000. The checks were deposited into a bank account that Rush controlled and she used those funds for personal expenses.

Third, Rush was responsible for receiving certain invoices and authorizing payment on behalf of USMS. From June 2007 to November 2008, Rush issued United States Treasury checks in the total amount of $58,000 and, disguising the credit card payments by creating false invoices to a company in a name similar to Rush's credit card company, used the checks to pay down the balance on her personal credit card account.

The United States commenced this criminal action against Rush on September 9, 2010. On October 12, 2010, Rush pleaded guilty to one count of conversion in violation of 18 U.S.C. § 641 for knowingly converting to her use money, valued at more than $1,000, of an agency of the United States. On May 9, 2011, this Court sentenced Rush to serve twenty-one months of imprisonment to be followed by thirty-six months of supervised release governed by several special conditions, and to pay restitution in the amount of $104,000 and a special assessment in

the amount of $100. As of early April 2012, Rush had satisfied her special assessment but still owed approximately $102,573 in restitution. Under the Court's [20] Judgment, the total amount of criminal penalties was "immediately payable" and "due immediately" and Rush is required to participate in the BOP's UNICOR program while incarcerated "in order to pay off restitution and assessment."[2] Further, when Rush completes her term of incarceration and is on supervised release, she is required to "pay the balance of any restitution owed at a rate of no less than $50 each month."

On June 8, 2011, Rush appealed this Court's Judgment to the United States Court of Appeals for the District of Columbia Circuit. On August 4, 2011, the appeal was dismissed upon Rush's own motion. Rush filed her pending Motion to Amend on January 30, 2012, and the United States filed its Response on March 12, 2012. Rush did not file a timely reply. Accordingly, the motion is fully briefed and ripe for a decision. In an exercise of its discretion, the Court finds that hearing oral argument would not be of assistance. *See* LCrR 47(f).

Before proceeding, the Court notes that a second matter is also pending: Rush's [28/34] Petition for Relief under 28 U.S.C. § 2255 ("Section 2255 Petition"), which is yet to be fully briefed and will be resolved in a subsequent opinion.

## DISCUSSION

Through her Motion to Amend, Rush asks the Court to modify its Judgment to set her monthly payments under the BOP's IFRP at the minimum amount allowable for the remainder of

---

[2] The Court has been informed that the Federal Prison Camp in Alderson, West Virginia, where Rush is currently located, does not have an active UNICOR program. Of course, implicit in the Court's Judgment is that Rush is required to participate in the UNICOR program only insofar as there is an active UNICOR program wherever she is incarcerated.

her incarceration. For at least two reasons, either of which is sufficient on its own to deny the relief sought, Rush's Motion to Amend shall be DENIED.

First, as Rush concedes, this Court's "Judgment does not reflect in relevant part any expression from the [C]ourt its intent that Petitioner Rush participate in the [I]FRP." Rush's Mot. to Amend at 3. Because the Court's Judgment does not require Rush to participate in the BOP's IFRP at all, let alone obligate her to make specific monthly payments under that program, this Court has no occasion to modify its Judgment to "reduce" Rush's monthly payments under IFRP.[3]

Second, the amount an inmate must pay under IFRP is a matter entrusted to the Executive Branch, and "[c]ourts are not authorized to override the [BOP's] discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation." *United States v. Sawyer*, 521 F.3d 792, 794 (7th Cir. 2008), *cert. denied*, 555 U.S. 1103 (2009); *see also United States v. Baldwin*, 563 F.3d 490, 492 (D.C. Cir. 2009) (per curiam) (expressing

---

[3] Despite her concession that the Court's "Judgment does not reflect in relevant part any expression from the [C]ourt its intent that Petitioner Rush participate in the [I]FRP," Rush's Mot. to Amend at 3, Rush elsewhere suggests that the Court's statement that Rush "shall participate in the UNICOR program in order to pay off restitution and assessment," Judgment at 6, should be "interpret[ed] as the means of meeting the restitution through the [Inmate] Financial Responsibility Program," Rush's Mot. to Amend at 2. The Court rejects this suggestion, which conflates UNICOR and IFRP. Whereas UNICOR "provide[s] work simulation programs and training opportunities for inmates confined in Federal correctional facilities," 28 C.F.R. § 345.11(a), though which eligible inmate workers may receive "pay and benefits," *id.* § 345.50, IFRP is a voluntary program through which the BOP "encourages each sentenced inmate to meet his or her legitimate financial obligations" by, among other things, helping the inmate "develop[] a financial plan for meeting those obligations," *id.* § 545.10, and ensuring the inmate is "responsible for making satisfactory progress in meeting his/her financial responsibility," *id.* § 545.11(b). The terms of the Court's Judgment require Rush to participate only in the UNICOR program. It simply "does not reflect . . . any expression from the [C]ourt its intent that Petitioner Rush participate in the [I]FRP." Rush's Mot. to Amend at 3.

doubt as to the district court's authority to give "specific instructions" regarding an inmate's payments under IFRP). To the extent Rush intends to seek relief in connection with her participation in IFRP, she should discuss with her case manager whether review of the BOP's interpretation of her monthly obligations is available through its Administrative Remedy Program. *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."). Alternatively, Rush might want to challenge the execution of her sentence under 28 U.S.C. § 2241 in the federal district where she is incarcerated (the Southern District of West Virginia). *See Morton v. Bolyard*, 810 F. Supp. 2d 112, 115 (D.D.C. 2011) ("To the extent petitioner challenges the execution of his sentence . . . , he must proceed under 28 U.S.C. § 2241 in the district where he is incarcerated). The Court expresses no opinion whether or not such measures would be meritorious. At this time, it suffices to observe that Rush's Motion to Amend is not the appropriate vehicle for the relief she seeks. *See United States v. Honesty*, Crim. No. 07-155 (PLF), 2010 WL 348021, at *2 (D.D.C. Jan. 29, 2010) ("To the extent that defendant is challenging his enrollment in the IFRP by BOP, this claim appropriately is one he should resolve with prison officials or bring as a petition for a writ of *habeas corpus* in the district in which he is incarcerated pursuant to 28 U.S.C. § 2241."); *see also Stern v. Fed. Bureau of Prisons*, 601 F. Supp. 2d 303, 305 (D.D.C. 2009) (collecting cases).

Before concluding, the Court observes that there may also be a third reason for denying Rush's Motion to Amend. The circumstances under which a district court may modify a sentence or judgment are "very specific and limited." *United States v. Washington*, 549 F.3d 905, 914 (3d Cir. 2008). Most of those circumstances are clearly inapplicable here. *See* 18

U.S.C. § 3582(c); FED. R. CRIM. P. 35(a), (b)(1); FED. R. CRIM. P. 36. At least theoretically, Rush could seek to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, but as noted above, Rush has filed a separate Section 2255 Petition, and although she was required to "'specify all the grounds for relief available,'" in her most recent submission, Order (Jan. 23, 2012), ECF No. [31], at 3 (quoting Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 1(b)), she does not raise the issue of her monthly obligations under the BOP's IFRP in identifying her four claimed grounds for relief. Nevertheless, under the current state of the law, it is unclear whether this Court might still have the authority to consider the issue from another source. *Compare United States v. Kyles*, 601 F.3d 78, 83 (2d Cir.), *cert. denied*, __ U.S. __, 131 S. Ct. 258 (2010), *with United States v. Lightner*, 266 F. App'x 240, 241-42 (4th Cir. 2008) (per curiam). Ultimately, because there are other grounds for denying Rush's Motion to Amend, the Court need not address the issue at this time.

## CONCLUSION AND ORDER

The Court has considered the remaining arguments tendered by Rush and has concluded that they are without merit. Therefore, and for the reasons identified above, it is, this 10th day of April, 2012, hereby,

**ORDERED** that Rush's [32] Motion to Amend is DENIED; and it is further

**ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum Opinion and Order to Rush at her address of record.

**SO ORDERED.**

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge